Filed 4/2/26  In re Katherine D. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re KATHERINE D. et al., Persons Coming Under the Juvenile Court Law. | B347820 |
| | (Los Angeles County Super. Ct. No. 25CCJP01229A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MARIO D., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Commissioner.  Reversed and remanded.

Maryann M. Goode, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Bryan P. Mercke, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

In this juvenile dependency case, the juvenile court terminated jurisdiction, orally announced an unlawful qualification for a forthcoming "exit order," and subsequently issued a written order that reflects several errors and inconsistently describes the noncustodial parent's visitation rights. We accordingly vacate the exit order and remand for the juvenile court to clarify its ruling and correct the errors.

### FACTS AND PROCEDURAL BACKGROUND

I.    Facts

A.    *The family*

Julieta A. (mother) and Mario D. (father) have been married since 2008 and have four children together—Katherine D. (born August 2009), Diana D. (born July 2010), Brisa D. (born October 2013), and Julian D. (born June 2023) (collectively, "the children").

B.    *Mother obtains a three-year civil restraining order*

On October 18, 2024, mother requested a domestic violence restraining order protecting her and the children from father based on father's drug use and escalating verbal and physical abuse of mother. Following a hearing, the trial court on November 12, 2024 entered a restraining order (the civil

2

restraining order) that (1) granted mother sole legal and physical custody of the children, (2) prohibited father from coming within 100 yards of the family home, mother's workplace or vehicle, and the children's schools, and (3) prohibited father from having any contact with mother. The order contained an exception allowing contact for purposes of court-order monitored visitation. The order had a three-year duration, set to expire on November 12, 2027.

### C. *Father repeatedly violates the civil restraining order*

In January and February 2025, father violated the restraining order "almost daily" by knocking on mother's window in the middle of the night or lurking in or around the apartment building where mother and the children lived. On one occasion, father broke into the home while mother and the children were away, left salt on the floor in what mother described as a "ritualistic" pattern, and stole mother's underwear, money, and jewelry. Approximately a week later, father appeared on the patio outside the apartment. He gestured at mother by moving his finger left to right across his neck, signaling cutting one's throat.

### D. *Diana and Katherine disclose sexual abuse by father*

In the early months of 2025, Diana told mother that father had sexually abused both her and Katherine. Mother reported the abuse to law enforcement; during forensic interviews, Diana disclosed that father inappropriately touched her when she was 8 or 9 years old, and Katherine disclosed that father raped her when she was 11 years old.

**E.** *Criminal charges are filed and the trial court issues a criminal protective order*

In response to father's conduct, the People charged father with (1) two counts of making criminal threats (Pen. Code, § 422, subd. (a)), (2) stalking (*id.*, § 646.9, subds. (a) & (f)), (3) eight counts of willfully violating a restraining order (*id.*, § 166, subd. (c)(1)), (4) one count of trespassing (*id.*, § 602, subd. (m)), and (5) one count of making obscene, threatening, harassing, or annoying telephone calls (*id.*, § 653m, subd. (a)). Father pled not guilty to these charges, and the court presiding over the criminal charges entered a criminal restraining order on February 25, 2025 that, as pertinent here, (1) prohibited father from coming within 100 yards of the family home, mother's workplace or vehicle, and the children's schools, and (2) prohibited father from having any contact with mother or the children. The criminal protective order has no exception allowing contact for purposes of visitation, and is to "remain[] in effect until further court order."

## II. Procedural Background

### A. *The petition*

On April 28, 2025, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to assert dependency jurisdiction over the children based on (1) father's domestic violence against mother (pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b)(1)[1]), (2) father's abuse of alcohol and methamphetamine (pursuant to section 300, subdivision (b)(1)), and (3) father's sexual abuse of Katherine and Diana (pursuant to section 300, subdivisions (b)(1), (d), and (j)).

---

[1]	All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

**B.**     *Jurisdiction and disposition*

The juvenile court held a combined jurisdictional and dispositional hearing on July 21, 2025.  The court sustained the allegations and stated its intent to terminate jurisdiction and issue an exit order granting mother sole legal and physical custody of the children.

1.     *Oral ruling*

At the hearing, the court indicated that the exit order was to have a "rider . . . to provide that before this family law order [that is, the exit order] can be modified[:  Father] is to complete, in full, 52 sex offender classes for adults, 52 domestic violence classes for batterers, parenting class, individual counseling, a substance abuse program, and submit to six clean tests."

2.     *Written orders*

The court asked mother's counsel to prepare a written exit order, which counsel submitted and the court signed the day after the hearing.  The exit order awarded mother full legal and physical custody of the children.  With regard to visitation by father, the exit order provided that:

--     Visitation was *permitted* as set forth in an attached JV-205 form.  The JV-205 form stated that a criminal protective order was "in place until November 12, 2027[2] that does not allow for visits," but further indicated that "[s]hould th[at order] be modified, [father] is to have monitored visits only."

--     "No visitation is ordered" for the reasons set forth in an attached JV-206 form.  The JV-206 form stated that the court was ordering "no visitation" because father "has not completed" a "[s]exual abuse treatment or awareness program for offenders," a "[d]rug abuse treatment program with random testing," an

---

2     As explained below, this expiration date is incorrect.

"[a]lcohol abuse treatment program with random testing," a "[d]omestic violence treatment program for offenders," "[p]arenting classes," or "[i]ndividual counseling," but also stated that father "is also to submit 6 consecutive negative drug tests [and] needs to complete a 52 week DV program and a 52 week sexual abuse treatment program for offenders."

### C. *Appeal*

Father filed a notice of appeal on the day of the hearing, which was the day before the exit order was signed. The notice stated that father was appealing the "orders of the court . . . sustaining [the] petition against father and [c]losing the case giving mother sole physical and legal custody of the children on 7/21/25 & 7/22/25."

## DISCUSSION

On appeal, father argues that the exit order must be vacated so the juvenile court can clarify father's visitation rights. The Department responds that father's appeal is not properly before us, and that the order is sufficiently clear. We address the threshold jurisdictional issue first.

### I. **Appellate Jurisdiction**

As a threshold matter, the Department argues we must dismiss father's appeal due to deficiencies in his notice of appeal—namely, (1) the notice was filed too early because it was filed *the day before* the juvenile court issued the written exit order he assails on appeal, and (2) the notice does not reach father's challenge to the visitation provisions of the exit order because the notice states only an intent to appeal the "orders of the court . . . sustaining [the] petition against father and [c]losing the case giving mother sole physical and legal custody of the children on 7/21/25 & 7/22/25."

6

We reject both contentions.

As to the Department's first objection, we have the discretion to treat a prematurely filed notice of appeal "as filed immediately after the rendition of judgment" where, as here, the trial court has announced its intended ruling (Cal. Rules of Court, rule 8.406(d)), particularly where the opposing party was in no way misled or prejudiced by the premature filing (see *In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 375). We elect to exercise that discretion here, as father's notice of appeal accurately identifies *both* the date of the oral ruling *and* the date of the written exit order.[3]

As to the Department's second objection, we have a duty to "liberally construe[]" notices of appeal as well as to treat a notice as sufficient "if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.405(a)(3).) Here, father identified the order(s) being appealed as the "orders of the court . . . sustaining [the] petition against father and [c]losing the case giving mother sole physical and legal custody of the children on 7/21/25 & 7/22/25." Although father has focused his appeal on the visitation element of those orders, his decision to challenge merely a subset of the orders explicitly designated in the notice does not render the notice defective.

## II. Defects With the Exit Order

Father argues that the juvenile court's oral ruling and its written exit order are confusing regarding his right to visitation, and that a remand is necessary for the court to clarify father's visitation rights. We agree, and come to this conclusion after

---

[3]     In light of our reasoning, we need not decide whether the trial court stamped the wrong date on the notice of appeal.

reviewing the court's rulings de novo. (*Dow v. Lassen Irrigation Co.* (2022) 79 Cal.App.5th 308, 326.)

The juvenile court appears to have issued three conflicting directives regarding father's right to visitation:

\-\-  In its oral ruling, the court states that father is to have "no contact" with the children (which presumably means no visitation as well), and that this ban is subject to a "rider" indicating that it may be subsequently lifted only if father completes certain programs.

\-\-  The court's written exit order (along with the attached JV-205 form) indicates that visitation by father would have been permitted, except that the criminal protective order bars visitation—but goes on to provide that if that protective order is "modified," father "is to have monitored visits only." These monitored visits are not explicitly contingent upon father satisfying the conditions of the "rider" announced by the court at the hearing.

\-\-  The court's written exit order (along with the attached JV-206 form) *also* indicates visitation is *not* "ordered" at all due to father's failure to complete certain programs.

The juvenile court's oral ruling was beyond its authority. The "rider" announced by the court prohibits further modification of its exit order—which would, by necessary implication, prohibit subsequent modification by the family court—unless father satisfies certain conditions (such as completing certain programs). Yet juvenile courts do "not have authority to condition the family court's modification of [an] exit order upon [a parent's] completion of [certain] programs." (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1456 (*Cole Y.*); see also *In re John W.*

8

(1996) 41 Cal.App.4th 961, 973.)  We accordingly disregard this invalid language.

However, that still leaves the written exit order, which simultaneously (1) indicates that monitored visits would be appropriate once the criminal protective order is lifted[4] *and* (2) prohibits all visitation.  These two mandates are irreconcilable, and remand is necessary.  (See *In re R.F.* (2021) 71 Cal.App.5th 459, 473 [remand is "necessary" where the court "is unable to discern the actual meaning of the confusing, inconsistent visitation order"].)

The Department responds with two arguments.

First, the Department points to the juvenile court's comments at the hearing that father's abuse of his family was "horrific" and that he showed an "inability to have any accountability," urging that these comments suggest that the court meant to deny visitation altogether.  We reject this suggestion because those comments were made by the court while explaining why no reasonable means existed to prevent removal; more to the point, the court's oral comments do not clarify the inconsistencies in the written order.

Second, the Department argues that father forfeited his challenges by failing to object below.  However, the primary defect—the inconsistency within the court's written exit order—

_____

4       The exit order's recitation of the details of the criminal protective order are incorrect in two ways—namely, (1) the exit order uses the case number for the civil protective order (24SMRO00377) rather than the criminal protective order (25ARCF00331), and (2) the exit order uses the expiration date for the civil protective order (November 12, 2027) rather than for the criminal protective order ("until further court order").  These errors should also be corrected on remand.

9

did not arise until the court issued that order, by which point the dependency proceedings had already concluded. The subsidiary defect—the validity of the juvenile court's orally pronounced "rider"—is an issue that "cannot be forfeited" because it is a purely "legal issue" that "goes to the allocation of jurisdiction between the dependency and family courts." (*Cole Y.*, *supra*, 233 Cal.App.4th at p. 1456, fn. 4.)

## DISPOSITION

The order is reversed. On remand, the juvenile court is to enter a custody and visitation order consistent with this opinion.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
MOOR